# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* ABDELBASET A. YOUSSEF, M.D.

---

DEPARTMENT OF LICENSING AND
REGULATORY AFFAIRS,

Petitioner-Appellee,

v

ABDELBASET ABDELMAGID YOUSSEF,
M.D.,

Respondent-Appellant.

UNPUBLISHED
April 25, 2017

No. 330222
Board of Medicine
LC No. 15-015505

---

Before: O'BRIEN, P.J., and SERVITTO and STEPHENS, JJ.

PER CURIAM.

Respondent appeals by right the order issued by the Board of Medicine suspending his license to practice medicine for six months and a day, rendering void his license to prescribe controlled substances, and imposing a $20,000 fine, to be paid before he could apply for reinstatement of his medical license. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

Petitioner filed a two-count administrative complaint against respondent alleging negligence and incompetence under MCL 333.16221(a) and (b)(*i*), respectively, in part on the basis of data petitioner obtained from the Michigan Automated Prescriptions System (MAPS) indicating that respondent had prescribed more than 25,000 controlled substances between August 1, 2012 and July 31, 2013. Petitioner's complaint focused on four of respondent's patients, BS, AR, CH, and KB, and alleged that in each case he had issued monthly prescriptions for commonly abused controlled substances without offering the patients alternative treatments or monitoring them for abuse or diversion of the drugs. Petitioner's investigation was prompted when BS's mother, a retired nurse, found him in possession of a large number of drugs that had been prescribed by respondent and in a condition that led her to believe he had overdosed on drugs.

John Hopper, a licensed physician with expertise in opioid use, management, and dependence, testified that he reviewed these four patients' charts and MAPS reports and

-1-

concluded that respondent's prescribing practices fell below the standard of care. Hopper's report to that effect was entered into evidence. Respondent testified that the amounts and combinations of medications he prescribed were necessary because his patients all suffered from conditions that caused chronic pain, which was often accompanied by anxiety and difficulty sleeping.

In the proposal for decision (PFD), the ALJ concluded that petitioner established that respondent violated MCL 333.16221(a) and (b)(*i*) by failing "to consider the use of other treatment modalities or non-narcotic medications for the treatment of pain," failing "to consistently monitor for abuse and diversion by utilizing urine drug testing and checking patients' prescription records with MAPS," and "[p]rescribing an inappropriate combination of medication[.]" Respondent filed exceptions to the PFD. The Board of Medicine's disciplinary subcommittee accepted the PFD after reviewing the record.

## II. ANALYSIS

> All final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law. This review shall include, as a minimum, the determination whether such final decisions, findings, rulings and orders are authorized by law; and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record. [Const 1963, art 6, § 28.]

We "review the entire record and not just the portions supporting the agency's findings." *Dep't of Community Health v Risch*, 274 Mich App 365, 372; 733 NW2d 403 (2007). "Substantial evidence is evidence that a reasonable person would accept as sufficient to support a conclusion. While this requires more than a scintilla of evidence, it may be substantially less than a preponderance." *Id*. (quotation marks and citation omitted).

### A. MOTION TO DISMISS

Respondent argues that the complaint should have been summarily dismissed. He alleged that the complaint did not state a claim under MCL 333.16221(a) or MCL 333.16221(b)(i). This is analogous to a motion under MCR 2.116(C)(8) which "tests the legal sufficiency of the claim on the pleadings alone to determine whether the plaintiff has stated a claim on which relief may be granted." *Spiek v Dep't of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998). "The motion must be granted if no factual development could justify the plaintiff's claim for relief." *Id*.

In this case, the tribunal ruled that the facts regarding respondent's record of prescribing drugs alleged in the complaint, "if proven, likely would be sufficient to establish a violation under MCL 333.16221(a) and (b)(i)." We agree. The factual assertion in the complaint cites the number of prescriptions for each of the named patients, the inappropriate combinations of such drugs, the lack of any record of the patients being given advice about the dangers of the drugs or advice on alternative treatments. The complaint also states that the patients denied receiving

such advice and counsel. This factual scenario adequately states a claim for violation of the cited laws.

## B. EXPERT TESTIMONY

Hooper's testimony was highly significant in this case and the respondent argues that it should not have been admitted. The crux of his objections to Hooper's testimony concerns its veracity and scientific reliability. Hopper testified that respondent had prescribed KB a combination of hydrocodone, alprazolam, promethazine with codeine, lorazepam, butalbitol, and carisoprodol. Hopper stated that it "would be hard to imagine a patient receiving this combination of drugs and actually function[ing] at all," and that the combination could cause "sedation, confusion," and could "certainly result in death as well." Hopper noted that respondent continued to prescribe KB a stimulant that was known to increase a person's blood pressure, despite the fact that KB's blood pressure was "over two hundred," which Hopper stated was "shocking."

Hopper testified that respondent had not met the minimum standard of care for BS either, noting that BS's prescriptions would cause a person to be "sedated and not functional." Hopper stated that if a person were receiving "that many prescriptions and was functioning right," he would suspect that the person was not taking them, causing a concern that they were being shared or sold to other people.

Respondent raises several arguments that are based largely on his assertion that Hopper's testimony contained incorrect information. Because he argued against the admission of some of this evidence at the hearing, we will consider this issue preserved. We are left to speculate the exact nature of his specific objections to portions of Hooper's testimony because they are addressed without transcript references. In general, we note that the admissibility of evidence in an administrative hearing is governed not by the Michigan Rules of Evidence but by the "somewhat relaxed" standard set forth in MCL 24.275. *Becker-Witt v Bd of Examiners of Social Workers*, 256 Mich App 359, 365; 663 NW2d 514 (2003). Respondent opines that Hooper's information was inaccurate or misleading but offers nothing more than his own opinion in support of that argument. However, the fact that respondent disagreed with Hopper's testimony did not render it either untruthful or inadmissible. Rather, the conflict between the two was to be resolved by the fact-finder, which is invested with the authority to assess witness credibility, *Risch*, 274 Mich App at 372, and to weigh the evidence presented, *Surman v Surman*, 277 Mich App 287, 309; 745 NW2d 802 (2007).

## C. PROCEDURAL ARGUMENTS

Respondent alleges errors with respect to certain actions taken, or not taken, by petitioner with regard to the filing of the complaint, predicated on the applicable statutes. Respondent argues petitioner violated MCL 333.16228 by failing to have its complaint reviewed and approved by a controlled prescription panel before it was filed. MCL 333.16228 provides as follows:

> (1) For an investigation involving the prescription of a controlled substance, the department *may* establish an ad hoc review panel to provide the

department with expert information regarding a specific health profession or health specialty or a specific health care treatment or procedure as it relates to the investigation. The department shall establish an ad hoc review panel under this subsection as follows:

   (a) The department shall triennially establish a pool of 10 physicians, 5 of whom are allopathic physicians licensed under part 170 [MCL 333.17001 *et seq.*] and 5 of whom are osteopathic physicians licensed under part 175 [MCL 333.17501 *et seq.*].

   (b) For each ad hoc review panel, the department shall appoint 3 physicians from the pool established under subdivision (a).

   (2) The ad hoc review panel shall provide the information described in subsection (1) to the department during the investigation process and before a formal complaint is issued. [Emphasis added.]

In using the permissive "may" when speaking to the department's authority to establish an ad hoc review panel, the Legislature clearly gave the department discretion to establish such a panel. See *People v Brown*, 249 Mich App 382, 386; 642 NW2d 382 (2002) ("The statutory term 'may' is permissive . . . ."). The correlating authority is the discretion not to establish such a panel. It is only when the department has exercised its discretion to establish an ad hoc review panel that MCL 333.16228 limits the department's authority. See *id.* ("[T]he term 'shall[ ]' . . . carries a mandatory, nondiscretionary connotation.").

Respondent also argues that the complaint should have been reviewed by a person in the medical field before it was filed. However, he cites no authority in support. *Houghton v Keller*, 256 Mich App 336, 339-340; 662 NW2d 854 (2003). In any event, MCL 333.16231(6)(a) gives the department the authority to issue a formal complaint if an investigation indicates that a licensee has violated Article 15 of the Public Health Code, MCL 333.16101 through 333.18838. This section contains no requirement that the complaint be reviewed by a person with medical qualifications prior to filing.

### D. OTHER EVIDENTIARY ISSUES

Respondent made several other evidentiary arguments, again without specific transcript references. The arguments concern admission of evidence that was irrelevant to or outside the scope of the complaint as filed. Again, the admissibility of evidence in an administrative hearing is governed by the standard set forth in MCL 24.275. *Becker-Witt*, 256 Mich App at 365. However, even if respondent's characterization is accurate, the tribunal was not required to exclude irrelevant evidence under MCL 24.275. Further, the tribunal acknowledged that it had taken testimony that went outside the scope of the allegations set forth in the complaint, but it made it clear it would not consider that evidence when rendering a decision.

Respondent also argues that the tribunal admitted petitioner's exhibits before he had time to review them. However, the record reflects that respondent was offered the opportunity to review petitioner's exhibits at a pretrial conference and declined.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Deborah A. Servitto
/s/ Cynthia Diane Stephens